

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | | |
|---|---|---|
| **MAURO SAITI,** | ) | **Docket No.: 2016-03-0661** |
| **Employee,** | ) | |
| **v.** | ) | |
| **ADVENT ELECTRIC, INC.,** | ) | **State File No.: 67377-2014** |
| **Employer,** | ) | |
| **And** | ) | |
| **ACADIA INSURANCE,** | ) | **Judge Lisa Lowe** |
| **Carrier,** | ) | |
| **And** | ) | |
| **TRAVELERS,** | ) | |
| **Carrier.** | ) | |

## EXPEDITED HEARING ORDER
## DENYING BENEFITS

This matter came before the undersigned Workers' Compensation Judge for an Expedited Hearing on March 28, 2017. The central legal issue is whether Mr. Saiti came forward with sufficient evidence demonstrating he is likely to prevail at a hearing on the merits that his injury and need for left shoulder surgery arose primarily out of and in the course and scope of his employment on August 19, 2014. Acadia Insurance Company provided workers' compensation coverage for Advent in 2014.

It has been alleged that Mr. Saiti's injury and need for medical treatment may have been caused by a late September work-related incident. Travelers provided workers' compensation coverage for Advent in 2015. While Mr. Saiti filed an amended Petition for Benefit Determination to include Travelers, he noted August 19, 2014, as the date of injury rather than a 2015 date of injury. Therefore, the Court limits its focus on Mr. Saiti's August 19, 2014 injury. For the reasons set forth below, the Court concludes Mr. Saiti did not come forward with sufficient evidence demonstrating that he is likely to prevail at a hearing on the merits. Therefore, he is not entitled to the requested benefits at this time.

1

# History of Claim

Mr. Saiti is a sixty-four-year-old resident of Sevier County, Tennessee who worked for Advent Electric, Inc. (Advent) as an electrician. While working at a Bojangles restaurant in Maryville, Tennessee on August 19, 2014, Mr. Saiti fell off an eight-foot ladder and landed on his left shoulder. He reported the injury and received treatment at Park Med Urgent Care Center. The provider diagnosed a left shoulder sprain and elbow contusion and restricted Mr. Saiti from performing overhead work. Mr. Saiti returned to work at full duty as an electrician, but noted worsening problems after working with heavy objects and/or performing overhead work. Despite continued pain, Mr. Saiti did not miss any time from work.

Mr. Saiti did not make a request for or receive additional medical care until October 28, 2015, approximately fourteen months after the August 19, 2014 work injury. While working at a Best Buy in late September 2015, Mr. Saiti attempted to move a ladder when it shifted and fell back toward his left shoulder. He immediately felt a sharp, stabbing pain. Mr. Saiti did not report this incident as a specific, new injury because he attributed it to his initial shoulder injury. However, he asked his wife to contact Acadia to request additional medical care. Acadia provided Mr. Saiti a panel of physicians, from which he selected Dr. Edwin Spencer at Knoxville Orthopedic Clinic.

Dr. Spencer evaluated Mr. Saiti and suspected a rotator cuff tear. He assigned restrictions of no overhead work, prescribed conservative treatment, and recommended an MRI. After the MRI, Dr. Spencer diagnosed Mr. Saiti with a left rotator cuff tear, bursitis, and biceps tendonitis. Dr. Spencer mentioned surgery as a possible treatment option, but wanted Mr. Saiti to attempt normal work duties before performing surgery. After a one-month attempt, Mr. Saiti returned to Dr. Spencer with continued pain complaints, especially with overhead activities. Thus, Dr. Spencer indicated surgery was necessary. Acadia denied the surgery request.

On or about March 21, 2016, Dr. Spencer received a causation letter from Nurse Case Manager (NCM) Susan Schwabe seeking his causation opinion. Dr. Spencer noted,

> I do feel that more likely than not that the injury that occurred is related to the work related incident a year prior. He had what appears to be some medial subluxation of the biceps and a high grade partial thickness rotator cuff tear. I think that those are related back to the work related injury.

NCM Schwabe asked Dr. Spencer if Mr. Saiti could have continued to work with his injuries. Dr. Spencer responded by stating the following:

> Yes. Many people do work with partial thickness rotator cuff tears. Once they become more symptomatic, either through continued overhead use

such as his mechanism or with gradual increase in size in the tear that can cause an increase in symptoms and subsequent evaluation. Again, many people are able to work with partial thickness rotator cuff tears causing intermittent pain.

(Ex. 14.) Dr. Spencer also wrote an August 24, 2016 letter to NCM Schwabe, in which he noted, "I feel that the work-related shoulder injury is related back to his fall, which was about a year prior. I think that his rotator cuff tear and shoulder injury is primarily related to his work accident when he fell from the ladder." *Id.*

Mr. Saiti was deposed on two different occasions. In his first deposition, Mr. Saiti said after a month and a half to two months following the initial incident, his shoulder was back to normal and he went back to performing overhead work. (Ex. 1 at 23-24.) He stated when he started to do his regular job again, the pain in his shoulder started to come back and he thought it was from the 2014 fall injury. *Id.* at 27-28, 47. Mr. Saiti testified his shoulder got significantly worse by continuing to perform his job. *Id.* at 38. With regard to the 2015 incident, Mr. Saiti explained his pain significantly worsened when he was lifting/standing up a twelve-foot ladder that started to "go back." *Id.* at 109-111. Mr. Saiti stated the pain after the 2015 ladder incident was like a knife sticking in his shoulder. *Id.* at 119-121.

In comparing the pain after the 2014 fall and the 2015 ladder incident, Mr. Saiti explained in his second deposition the pain was different after the 2015 ladder incident. (Ex. 2 at 15.) Mr. Saiti testified that after the 2014 fall the pain was getting progressively worse; then the 2015 ladder incident was the final straw. He did not feel the 2015 ladder incident was a separate injury. *Id.* at 20.

As relevant here, Dr. Spencer testified by deposition as follows:

Q: Can you state to a reasonable degree of medical certainty that the tear that was ultimately shown on the MRI is exactly the same tear that occurred on August 19, 2014, if in fact that's when it occurred, and that it had not increased in size since that time?

A: Yeah. I can't say that either. . . .

(Ex. 3 at 32.)

Q: Would you—do you have an opinion as to whether those symptoms described, i.e., hard pain, sharp pain, as-if-you-were-getting-stabbed pain, would be consistent with a partially [sic] rotator cuff tear, or a worsening of that shoulder condition that was ultimately found on the MRI?

3

A: Yeah, could be. . . .

Id. at 36.

Q: [C]an you state to a reasonable degree of medical certainty, when considering all causes, that the original fall from the ladder in August 19, 2014, was the primary cause, or the 51 percent cause of his current shoulder condition, or the need for the medical care currently suggested?

A: Guys, I don't know that I can.

Q: Is your opinion then, Dr. Spencer, that within a reasonable degree of medical certainty, the need for surgery was caused by the incident that Mr. Burrow explained happened in October carrying the ladder?

A: It was certainly the reason why he came in for treatment in November. Yeah. And I don't know if that was the origin of the rotator cuff tear, or not.

Q: The truth of the matter is, there's no way to tell, is there? I mean—

A: Not from my standpoint. You have got a radiologist saying its indeterminate too. The only thing I would use to determine it was the history.

Q: [C]an you say within [a] reasonable degree of medical certainty that this need for surgery was caused by trauma that happened on any particular day? Can you do that?

A: In this case, no, I can't.

Q: You don't know whether Mr. Saiti tore his rotator cuff back in August 2014, and you don't know whether he tore it with this ladder incident in October 2015? Is that—

A: That's correct[.] . . .

Id. at 40-41.

Q: Dr. Spencer, given what you've learned today about this additional history, is it more likely than not that the October 15 incident when Mr. Saiti was handling the ladder was an exacerbation of what had originally occurred back in August of 2014?

4

A: It can be termed an exacerbation of it, sure. I mean, if he said that it was—the location of the pain was similar, it was just more of a very sharp hard stabbing pain, then yeah, you can term it as an exacerbation. I don't know if that helps, or muddies the water.

Q: Would you characterize that as more likely than not?

A: I would say it's probably more likely than not, since the location of the pain was similar.

*Id.* at 45.

### *Mr. Saiti's Position*

At the hearing, Mr. Saiti testified that he did not consider the 2015 ladder incident to be an accident or a new injury, but it did cause the worse pain in his shoulder. Mr. Saiti argued in response to the two causation letters that Dr. Spencer stated the shoulder injury arose primarily out of and in the course and scope of his employment on August 19, 2014. Mr. Saiti argued he was injured while working and the Court should order the surgery; a determination as to which carrier is responsible for payment of the surgery can be made later.

### *Acadia's Position*

Acadia argued Dr. Spencer did not have a full history from Mr. Saiti at the time he answered the causation letters. Dr. Spencer's opinion changed when provided with a history of the 2015 ladder incident during his deposition. Acadia avers Dr. Spencer could not state Mr. Saiti's injury arose primarily from the August 19, 2014 work injury and his opinion is presumed correct. Further, Mr. Saiti's testimony, coupled with that of Dr. Spencer, establish the 2015 ladder incident caused the need for medical treatment and the recommended surgery.

### *Travelers' Position*

Travelers argued Mr. Saiti did not report the 2015 ladder incident because he did not consider it a new work injury. Because Mr. Saiti had a prior workers' compensation claim, he was aware of how to report workers' compensation injuries. Mr. Saiti never mentioned the 2015 ladder incident to Dr. Spencer during office visits, and Dr. Spencer testified he could not say that either the 2014 or the 2015 incident caused Mr. Saiti's rotator cuff tear. In addition, because Mr. Saiti did not file his amended Petition for Benefit Determination until November 3, 2016, more than a year after the 2015 incident, his claim is barred by the statute of limitations.

**Findings of Fact and Conclusions of Law**

*Standard Applied*

The following legal principles govern this case. Because it is in a posture of an Expedited Hearing, Mr. Saiti need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2016).

*Applicable Authority*

The Workers' Compensation Law requires employers to provide injured employees with reasonable and necessary medical care related to a work injury. A work-related injury causes a need for medical treatment if, within a reasonable degree of medical certainty, it contributed more than fifty percent to the need for treatment. To meet the "reasonable degree of medical certainty" standard requires a physician opinion that it is more likely than not, considering all possible causes, as opposed to speculation. *See* Tenn. Code Ann. §§ 50-6-204(a)(1)(A), 50-6-102(14)(C), and 50-6-102(14)(D) (2016).

Furthermore, the panel-selected physician's causation opinion is presumed correct, as is the treatment he recommends. However, that opinion might be rebutted by a preponderance of the evidence. *See* Tenn. Code Ann. §§ 50-6-102(14)(E) and 50-6-204(a)(3)(H) (2016); *see also Morgan v. Macy's*, 2016 TN Wrk. Comp. App. Bd. LEXIS 39, at *17 (Aug. 31, 2016).

*Analysis*

When applying the above principles to this case, the Court first notes there is no dispute that Mr. Saiti sustained and reported a work-related injury on August 19, 2014. The issue is whether that injury or the 2015 ladder incident contributed more than fifty percent to the need for Mr. Saiti's shoulder surgery.

The Court finds Mr. Saiti to be credible. He explained his actions at work on August 19, 2014, and his actions at work in late September 2015. This Court has no doubt that the work incidents and ensuing pain occurred exactly as Mr. Saiti described. However, the question of whether Mr. Saiti's need for surgery to repair his torn rotator cuff is related to either the 2014 injury or the 2015 ladder incident requires an expert medical opinion.

6

In that regard, because Mr. Saiti selected Dr. Spencer from a panel of physicians, his causation opinion is presumed correct. Dr. Spencer's causation letters, written without the benefit of a description of the 2015 ladder incident, related Mr. Saiti's rotator cuff tear and need for surgery to his August 19, 2014 work injury. It appears that the first time Dr. Spencer became aware of the 2015 ladder incident was during his deposition. Unfortunately for Mr. Saiti, once faced with that additional history, Dr. Spencer could not state within a reasonable degree of medical certainty that Mr. Saiti's need for surgery was caused by the trauma of either August 19, 2014 or late September 2015. Since Mr. Saiti did not provide any countervailing medical causation opinion, the Court is left with only Dr. Spencer's testimony.

Therefore, as a matter of law, this Court must hold, at this time, Mr. Saiti did not come forward with sufficient evidence from which this Court can conclude he is likely to prevail at a hearing on the merits that his injury and need for left shoulder surgery arose primarily out of and in the course and scope of his employment on August 19, 2014. Accordingly, the Court denies Mr. Saiti's request for benefits at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Saiti's claim against Advent Electric, Inc. and both its workers' compensation carriers for the requested medical and temporary disability benefits is denied at this time.

2. This matter is set for a Scheduling Hearing on June 26, 2017, at 9:30 a.m. Eastern Time. The parties must call 865-594-0109 or 855-383-0003 toll free to participate in the Scheduling Hearing. Failure to appear by telephone may result in a determination of the issues without your further participation.

**ENTERED this the 13th day of April, 2017.**

_____
**HON. LISA A. LOWE**
**Workers' Compensation Judge**

7

# APPENDIX

Exhibits:
1) Deposition of Mauro Saiti, October 26, 2016
2) Deposition of Mauro Saiti, January 27, 2017
3) Deposition of Dr. Edwin E. Spencer, Jr.
4) Affidavit of Mary Jacobs
5) Affidavit of Stephen Boertman
6) Affidavit of Terri Roberts
7) First Report of Work Injury, Form C-20
8) Wage Statement, Form C-41
9) Panel of Physicians, Form C-42
10) Workers' Compensation & Employer's Liability Insurance Policy
11) Medical Records of Park Med Medical Center
12) Medical Records of Pro Therapy Services
13) Medical Records of Dr. Edwin Spencer, Knoxville Orthopedic Clinic
14) Causation Letters of Dr. Edwin Spencer

Technical Record:

1) Petition for Benefit Determination
2) Dispute Certification Notice
3) Motion to Stay Proceedings pending Taking the Deposition of Dr. Spencer
4) Employee's Reply to Motion to Stay Proceedings Pending Taking Deposition of Dr. Spencer and Employee's Motion to Amend Petition for Benefit Determination
5) Order Finding Employer's Motion to Stay Proceedings Pending Taking the Deposition of Dr. Spencer Premature
6) Amended Petition for Benefit Determination
7) Dispute Certification Notice
8) Petition for Benefit Determination
9) Request for Expedited Hearing
10) Order of Voluntary Dismissal only as to Accident Fund Insurance Co. of America
11) Notice of Filing Declaration of Mary Jacobs
12) Notice of Filing Deposition of Edwin E. Spencer, M.D.
13) Employer's (During Such Time as Insured by Acadia Ins. Co.) Witness and Exhibit List for Expedited Hearing
14) Employer's (During Such Time as Insured by Acadia Ins. Co.) Record Designated as Evidence for Expedited Hearing
15) Pre-Expedited Hearing Brief of Employer During Such Time as Insured by Acadia Ins. Co.
16) Notice of Filing of Affidavit of Stephen Boertman

8

17) Notice of Filing of Affidavit of Terri Roberts
18) Notice of Filing of Charter Oak Fire Ins. Co. Response to Employee's, Mauro Saiti, Request for Expedited Hearing
19) Employee's Reply to Employer/Insurers' Responses to Employee's Request for Expedited Hearing

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 13th day of April, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Ben W. Hooper III, Employee's Attorney | | | X | Bwh3rd@yahoo.com |
| D. Brett Burrow, Advent Electric's Attorney | | | X | bburrow@burrowlee.com |
| Jennifer C. Schmidt, Charter Fire Ins. Co.'s Attorney | | | X | JCSCMID@travelers.com |

PENNY SHRUM, Court Clerk
WC.CourtClerk@tn.gov